UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KAWASAKI MOTORS FINANCE
CORPORATION,

      Plaintiff,

v.

ROBERT J. SCOZZARI,
LINDA B. SCOZZARI, and
ALFRED J. BALERNA,

      Defendants.

CA:  05 10875WGY

## AFFIDAVIT OF BART HILLIARD

I, Bart Hilliard, do on oath depose and say as follows:

1.      I am a Senior Collection Supervisor employed by Kawasaki Motors Finance Corporation ("KMFC"), the Plaintiff in the above-captioned action, located at 9950 Jeronimo Road, Irvine, California.  KMFC is in the business of financing the sale of Kawasaki Motors Corporation, U.S.A. equipment, including but not limited to motorcycles, watercraft, utility vehicles, and all-terrain vehicles, through authorized dealerships.

2.      My duties and responsibilities as Senior Collection Supervisor include the care, control and custody of the books and records of KMFC.  I have personal knowledge of the facts and circumstances that are the subject of this Affidavit.

3.      On or about October 31, 1995, KMFC and CBL Enterprises, Inc. ("CBL") d/b/a Kawasaki of Cape Cod, entered into a Financing and Security Agreement ("FSA"), a copy of which is attached hereto as Exhibit 1.

4.      In conjunction with the FSA, CBL gave KMFC a security interest in the inventory now owned or later acquired by CBL, financed by KMFC, by and through a financing statement, a copy of which is attached hereto as Exhibit 2.

5.      On or about April 2, 2000, Defendant, Robert J. Scozzari executed a Continuing Guarantee with KMFC, which guaranteed payment to KMFC of "any and all indebtedness [] of CBL Enterprises, Inc. [] to KMFC," a copy of which is attached hereto as Exhibit 3.

6.      On or about April 2, 2000, Defendant, Linda B. Scozzari executed a Continuing Guarantee with KMFC, which guaranteed payment to KMFC of "any and all indebtedness [] of CBL Enterprises, Inc. [] to KMFC," a copy of which is attached hereto as Exhibit 4.

7.      On or about April 2, 2000, Defendant, Alfred J. Balerna executed a Continuing Guarantee with KMFC, which guaranteed payment to KMFC of "any and all indebtedness [] of CBL Enterprises, Inc. [] to KMFC," a copy of which is attached hereto as Exhibit 5.

8.      The Continuing Guarantee of Robert J. Scozzari, the Continuing Guarantee of Linda B. Scozzari, and the Continuing Guarantee of Alfred J. Balerna (collectively, "Guarantees") provide that the liability of the Defendants shall be for the full amount due KMFC at any time and from time to time, including but not limited to principal, together with all interest upon the indebtedness.

9.      The Guarantees further provide that the Defendants shall pay reasonable attorney's fees and all other costs and expenses which may be incurred by KMFC in the collection or enforcement of obligations pursuant to the Guarantees, whether or not suit is filed.

10.      KMFC fully performed under the FSA and CBL defaulted under the terms and conditions of the FSA by failing to repay the indebtedness due and owing to KMFC.

11.      Pursuant to the FSA, KMFC took possession of the collateral, with CBL's

consent.

12.    On September 17, 2004, after providing proper notice to the Defendants, KMFC

conducted a sale of the collateral, which sale was conducted in good faith and in a commercially

reasonable manner.

13.    The amount realized from the disposition of the collateral was distributed to

KMFC to pay down the total amount then due and owing by CBL.

14.    There presently remains a deficiency balance, after disposition of the collateral, in

the amount of $151,634.45, as follows:

| | | |
|---|---|---|
| i. | UCC Sale Deficiency | $17,460.00 |
| ii. | Transportation Fees | $3,666.12 |
| iii. | SAU (Sold and Unpaid Units) | $100,743.00 |
| iv. | Finance Charges | $ 5,426.73 |
| v. | Attorneys' Fees | $31,288.47 |
| | | $158,584.32 |

A copy of the KMFC Statement of Account detailing the UCC Deficiency is attached hereto as

Exhibit 6.

15.    The UCC Sale Deficiency figure of  $17,460.00 is the deficiency from the sale of

inventory that KMFC was able to recover from CBL.  Exhibit 6, p. 2.  The SAU figure of

$100,743.00 is the deficiency resulting from inventory sold by CBL but for which KMFC had

not received payment.  Exhibit 6, p. 2.

16.    The transportation fee of $3,666.12 is the cost of transporting the inventory for

sale from CBL on Cape Cod to KMFC's distribution center in New Jersey.

17.    The finance charge figure of $5,426.73 is the amount owed pursuant to the FSA

(Exhibit 1).

18.    The attorney's fees figure of $31,288.47 are those fees incurred by KMFC prior to the initiation of the instant litigation, in an attempt to recover amounts owed from CBL, including but not limited to filing a proof of claim and a failed attempt at negotiating a resolution of the issues in CBL's pending bankruptcy action captioned In Re CBL Enterprises, Inc. d/b/a Cape Cod Powersports (Chapter 11)(No. 04-18007-WCH)(U.S. Bankr., D. Mass.).  This figure also includes attorneys' fees incurred in the instant action, to date.

19.    KMFC has demanded that Defendants pay the deficiency, but Defendants have failed or refused to pay.

20.    I am not aware of any liability insurance available to satisfy the judgment that KMFC will recover against the Defendants.  Moreover, I am aware of at least the following cases pending in Massachusetts where other creditors are seeking to recover sums due from the Defendants, and have already attached many of the Defendants' assets:

a.    Drowne v. Balerna et al., C.A. No. 02-1655 (Norfolk Superior Court);

b    Knights of Columbus v. Balerna et al., C.A. No. 01-126 (Norfolk Superior Court);

c.    GE Commercial Distribution Finance Corp. v. CBL Enterprises et al., C.A. No. 04-0570 (Barnstable Superior Court);

d.    Lewis Trustee et al. v. Balerna, C.A. No. 04-0717 (Barnstable Superior Court);

e.    Bombardier Capital, Inc. v. Scozzari et al., C.A. No. 05-0132 (Barnstable Superior Court).

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY, THIS 15th OF JUNE, 2005.

_/s/ Bart Hilliard_____
Bart Hilliard

CERTIFICATE OF SERVICE

I, Jeffrey A. Dretler, attorney for the Plaintiff in the above-captioned matter, hereby certify that on this 16th day of June, 2005, I served the within document upon all parties of record by delivering, via first class mail, postage pre-paid, a copy thereof to: Robert J. Scozzari, 34 Regis Road, East Falmouth, MA 02536-4247; Linda B. Scozzari, 34 Regis Road, East Falmouth, MA 02536-4247; and Alfred J. Balerna, 19 Sunset Drive, P.O. Box 176, S. Walpole, MA 02071.

/s/ Jeffrey A. Dretler
Jeffrey A. Dretler

# **EXHIBIT 1**

**▄━► Kawasaki Motors Finance Corporation**

RECEIVED
NOV 6 1995
KMFC

# FINANCING AND SECURITY AGREEMENT

THIS FINANCING AND SECURITY AGREEMENT ("Agreement") is made pursuant to Article 4, Chapter 3, of the California Commercial Finance Lenders Law, by and between KAWASAKI MOTORS FINANCE CORPORATION, a Delaware corporation, with its principal place of business at 9950 Jeronimo Road, Irvine, California 92718 ("KMFC") and the undersigned ("Dealer") who is a retail seller of Kawasaki and other brand products and as further described on the Statement of Identity, attached hereto and incorporated herein by reference. This Agreement is made on the basis of the following facts and recitations:

## RECITALS

A.  Dealer engages in the business of wholesale purchasing and retail selling of certain products manufactured or distributed by Kawasaki Motors Corp., U.S.A. ("Kawasaki") and, in some cases, products manufactured or distributed by other manufacturers or distributors. The products may include, without limitation, some or all of the following: motorcycles, all terrain vehicles, watercraft, utility vehicles, generators and other goods (collectively, "Inventory").

B.  Dealer desires to obtain credit from KMFC to purchase new Inventory and, in some cases, to refinance Dealer's prior purchases of Inventory.

C.  KMFC is willing to provide credit for such purposes to Dealer on the terms and conditions contained herein.

NOW, THEREFORE, based on the foregoing premises, and for good and valuable consideration, and intending to be legally bound by this Agreement, Dealer and KMFC agree as follows:

1.  CONDITIONS PRECEDENT TO KMFC'S EXTENSION OF CREDIT.
    Before KMFC extends credit to or on behalf of Dealer, whether an initial advance or additional advances in the future, all of the following conditions shall have been either satisfied or waived by KMFC:

    (a)  Dealer and, as applicable, any guarantors or other applicable person or entity, shall have executed and delivered to KMFC each of the following documents (collectively, "Required Documents"):

    (i)  This Agreement;

    (ii)  An application to participate in the KMFC inventory financing program (the "Application") as contemplated by this Agreement, which Application KMFC deems complete in all respects and, as to future Advances, is and remains in effect without amendment or modification except as approved by KMFC;

    (iii)  Dealer's most recent Financial Statements and other financial documents that KMFC requests in the Application or otherwise and, as of the time of each additional Advance, the then most recent Financial Statements and all other supplemental documents, instruments and reports as KMFC may require;

    (iv)  Any and all financing statement(s), and other supplemental guaranties, agreements, instruments, deeds of trust, mortgages, assignments, reports and documents KMFC provides to Dealer and/or additional debtors, guarantors and others, from time to time, for execution, delivery, and filing;

    (v)  If Dealer is a corporation, Dealer's articles of incorporation, bylaws, corporate resolutions in the form required by KMFC, duly certified by an officer of Dealer, and a Certificate of Good Standing issued by the state of Dealer's incorporation and dated not earlier than 30 days before the date hereof;

    (vi)  If Dealer is a partnership, a partnership certificate in the form requested by KMFC, duly executed by a general partner of Dealer, together with such other certificates, agreements, and documents evidencing the due formation and continuing existence of Dealer;

    (vii)  The Statement of Identity;

    (viii)  If the credit facility is guarantied, continuing guaranties in form acceptable to KMFC and such other financial statements, agreements, documents and instruments as KMFC may require of each guarantor; and

    (ix)  Such fictitious business name statements and other evidence satisfactory to KMFC of Dealer's eligibility, standing, capacity and qualification to transact business in all states in which Dealer conducts operations.

    (b)  Dealer shall be an authorized Kawasaki Dealer under a valid and unexpired Kawasaki Authorized Dealer Sales and Service Agreement for those Kawasaki brand products in Dealer's Inventory financed by KMFC;

    (c)  Dealer's landlord, if any, shall have signed and delivered to KMFC an agreement waiving any lien, security interest or other encumbrance, if any, of the landlord on any of the Collateral;

    (d)  All secured lenders of Dealer shall have signed and delivered to KMFC subordination agreements as shall be satisfactory to KMFC;

    (e)  Each and every representation and warranty that Dealer makes in this Agreement and in any of the other Required Documents is true and correct both as of the date hereof and as of the date any credit is extended to Dealer;

    (f)  Dealer has provided to KMFC either (i) proof of insurance in form and substance satisfactory to KMFC, or (ii) a completed application for KMFC to provide Dealer with adequate insurance (in the event KMFC offers insurance to Dealer); and Dealer shall also provide KMFC with proof of payment of all insurance premiums; and

    (g)  No Event of Default as defined in Section 10 of this Agreement shall have occurred, be continuing or exist.

2.  DEFINITIONS.
    In addition to all terms defined in other parts of this Agreement, the following definitions shall apply:

    (a)  "Advances" means the payments KMFC will make, in KMFC's sole discretion, on behalf of Dealer, to Kawasaki or other manufacturers or distributors of Inventory, not to exceed the invoiced amount for the Inventory and includes any initial advance and any and all subsequent advances.

    (b)  "Agreement" means this Agreement, the Required Documents and all exhibits, schedules, supplements, bulletins, and amendments to this Agreement, from time to time. Changes in Finance Charges and other terms and conditions expressly stated in writing by KMFC to be

applicable to the Agreement, and accepted by Dealer in writing or as evidenced by Dealer's continuing performance under the Agreement, acceptance of Advances, or other consideration therefor, shall constitute and be deemed to be written modifications of this Agreement, to that extent. Written statements by KMFC regarding specific terms and conditions of Advances and otherwise pertaining to the Agreement at or contemporaneously with the execution of this Agreement shall also be deemed to be part of the Agreement, except that no statement purporting to obligate KMFC to make Advances shall be effective unless such statement expressly recites that it amends this Agreement.

(c) "Amount Due" means the amount listed on the Monthly Statement which Dealer must pay by the Due Date to avoid additional Finance Charges.

(d) "Amount Subject to Finance Charge" means the total amount on which KMFC will charge the Finance Charge, and will consist of (i) all Advances made and Service Charges incurred during the month for which a particular Monthly Statement is issued, plus (ii) the portion of the Amount Due on the most recent previous Monthly Statement that was not paid by the Due Date.

(e) "Charges" means the individual components or aggregate total, as applicable, of all Finance Charges, Advances, Service Charges, surcharges for Inventory insurance or any other fees or charges which KMFC may establish from time to time and assess against Dealer.

(f) "Collateral" means all Inventory and other assets of Dealer described in Section 5 of this Agreement, together with all proceeds and products thereof.

(g) "Credit Limit" means the amount KMFC establishes from time to time as the maximum aggregate amount of credit KMFC may extend to or for the account of Dealer, outstanding at one time, which amount may be comprised of separate credit sublimits for each product line of Inventory. KMFC may raise or lower the Credit Limit at any time in its sole discretion and otherwise as set forth herein.

(h) "Due Date" means the day or date KMFC establishes from time to time as the deadline for paying the Amount Due on each Monthly Statement to avoid additional Finance Charges.

(i) "Finance Charge" means the amount KMFC will charge Dealer on the Amount Subject To Finance Charge. KMFC will give notice to Dealer of the Finance Charge KMFC establishes from time to time under this Agreement (including changes in the method or formula for computing Finance Charges), and each such notice, together with Dealer's performance, acceptance of Advances hereunder or other consideration therefor, shall constitute an agreement between KMFC and Dealer that the new Finance Charge is applicable to all past and future Advances and other sums due from Dealer, from the date set forth in each notice until the rate is changed by subsequent notice from KMFC to Dealer. Changes in the applicable rate of Finance Charge based on changes in an index or other reference rate, if applicable, shall be automatic and shall be deemed agreed upon by the parties hereto, without notice by KMFC. All Finance Charges shall be payable monthly. Failure to pay the Finance Charge by the Due Date will result in such unpaid Finance Charge being added to the Amount Subject To Finance Charge for the next Monthly Statement and may result in KMFC's exercising one or more remedies available to it, including, but not limited to, KMFC's declaring a default hereunder and ceasing to make any further Advance to Dealer.

(j) "Financial Statement" means all such statements, reports, schedules, and other information in written form and containing such itemized detail as KMFC may require from time to time (including Financial Statements audited, reviewed, and/or compiled by independent certified public accountants) fairly and accurately presenting the financial condition of Dealer, of all guarantors of the Indebtedness, and any general manager or similar officer, agent or employee of Dealer, and operating results of Dealer. All Financial Statements must be current as of a date no earlier than 30 days prior to the date delivered to KMFC, including, but not limited to, a balance sheet of all assets, liabilities, investor equity, and a statement of income and operations (profit and loss statement), copies of federal and state income tax returns, and schedules of real and personal property assets. Unless otherwise approved by KMFC, all Financial Statements must be prepared in accordance with generally accepted accounting principles consistently applied.

(k) "Indebtedness" means all present and future obligations and liabilities of Dealer to KMFC under this Agreement, any of the other Required Documents, or any other agreement of any kind or nature, including, without limitation, all Charges.

(l) "Monthly Statement" means the statement KMFC will send to Dealer each month listing all Charges which have been added to the Indebtedness for the month.

(m) "Service Charge" means any amounts KMFC may charge Dealer from time to time for miscellaneous services, including, without limitation, the cost of audits of Dealer's Inventory, maintenance of records and financing statements, handling and administrative costs and fees established from time to time by KMFC, and costs of other services provided from time to time.

3.   EXTENSIONS OF CREDIT.

Subject to all the terms and conditions of this Agreement, KMFC may, in its discretion, make Advances on behalf of Dealer, up to the maximum of Dealer's Credit Limit. If and to the extent KMFC makes any Advance in excess of any Credit Limit, such Advance shall (i) be subject to the same terms, conditions and Charges as any other Advance; (ii) be secured by the Collateral; and (iii) not constitute an increase in the Credit Limit, unless KMFC so notifies Dealer.

All Advances shall be for the sole purpose of Dealer's purchases of Inventory. KMFC is authorized to make the Advances directly to Kawasaki and other distributors, vendors, or manufacturers supplying Inventory to be financed by KMFC, as applicable, for the benefit of Dealer, rather than to Dealer. KMFC will charge all Advances to Dealer. KMFC expressly authorizes KMFC to make Advances from time to time which may cause the total amount of Indebtedness to exceed Dealer's then existing Credit Limit (whether or not KMFC also elects to formally increase Dealer's Credit Limit), including Advances made solely at the request or order of Kawasaki or other distributors, manufacturers, or vendors of Dealer, without prior notice to or specific consent of Dealer. KMFC may conclusively presume, without inquiry, that all such requests and orders have been expressly authorized pursuant to specific or standing purchase orders or marketing plans previously approved and accepted by Dealer.

Dealer understands that the making of any Advance by KMFC is at KMFC's discretion, and KMFC may elect not to make any Advances at any time without prior notice to Dealer. Dealer further understands that KMFC intends to terminate Advances upon Kawasaki giving sixty (60) days' notice to Dealer, or notice to Dealer of a fixed period of time greater than sixty (60) days if required by state law, of termination of the Dealer Sales and Service Agreement in effect between Kawasaki and Dealer or in the event that any other dealership or distributorship agreements of Dealer are cancelled by other manufacturers or distributors, or in the event any of Dealer's required licenses or permits are cancelled or revoked in whole or in part. Dealer further understands that KMFC reserves the right to terminate Advances upon the occurrence of any Event of Default described in Section 10 hereof.

4.   MONTHLY STATEMENT

KMFC may send a Monthly Statement to Dealer which will show (i) Advances; (ii) Finance Charge; (iii) Service Charge (if any); and (iv) any other miscellaneous Charges. Payment will be due by the Due Date to avoid additional Finance Charges. Dealer will notify KMFC in writing of any amounts on the Monthly Statement disputed by Dealer within fifteen (15) days after KMFC sends the Monthly Statement to Dealer; otherwise, Dealer shall be deemed to have acknowledged the amount due as set forth in the Monthly Statement and all Monthly Statements shall constitute evidence of the Indebtedness.

KMFC may from time to time provide, in the Monthly Statement or in a separate notice, additional information to Dealer regarding the method of calculation of Charges and billing information or make other modifications to the terms and conditions of this Agreement. If Dealer desires not to accept such changes, Dealer must notify KMFC, in writing, within fifteen (15) days of Dealer's receipt of such Monthly Statement; otherwise, all such changes shall, automatically and without further notification to Dealer, be and become effective and fully binding upon Dealer with respect to all existing Indebtedness and subsequent Advances. Dealer's election to not accept such changes may result in KMFC's election to terminate this Agreement or refusing to make further Advances to Dealer.

5.  GRANT OF SECURITY INTEREST.
    To secure repayment of all Indebtedness of Dealer to KMFC, Dealer hereby grants to KMFC (i) a purchase money security interest in the Inventory and all other inventory, equipment or goods financed by KMFC, whether now owned or later acquired by Dealer, together with all improvements, replacements or additions thereto, and the proceeds and receivables from the sale or disposition of any of the above (including insurance premiums and insurance payments to Dealer), wherever the same may be located; and (ii) a general security interest in all of Dealer's other inventory, equipment, goods, machinery, furniture, fixtures, vehicles, accounts, accounts receivable, instruments, deposit accounts, notes, chattel paper, rebates, incentive payments, contracts, and all other rights to payment and general intangibles, whether now owned or later acquired by Dealer, together with all improvements, replacements or additions thereto, and the proceeds from the sale or disposition of any of the above (including insurance premiums and insurance payments to Dealer), wherever the same may be located.

6.  REPRESENTATIONS AND WARRANTIES.
    Dealer represents and warrants now, and at the time of each Advance, that:
    (a) If Dealer is a corporation:
        (i) Dealer is duly organized, validly existing and in good standing under the laws of the State of its incorporation;
        (ii) Dealer is qualified to do business as a foreign business corporation in every state (other than its state of incorporation) where Dealer is required to do so by law in order to conduct its business; and
        (iii) Dealer's execution, delivery and performance of this Agreement and the other Required Documents are within Dealer's corporate powers, and do not contravene Dealer's charter or bylaws;
    (b) Dealer's execution, delivery and performance of this Agreement and the other Required Documents do not contravene any law or any contractual restriction binding on or affecting Dealer;
    (c) Dealer has full right and power to grant a first priority security interest in the Inventory to KMFC, and to grant a security interest in the other Collateral to KMFC;
    (d) All Financial Statements that Dealer delivers to KMFC are true and correct in all respects, fairly present the financial condition of Dealer and are all in accordance with generally accepted accounting principles consistently applied;
    (e) This Agreement and the other Required Documents to which Dealer is a party, together with all terms and conditions of prior notices, bulletins and Monthly Statements as herein provided, are valid and binding obligations of Dealer and are legally enforceable in accordance with their respective terms.
    (f) There is no pending or threatened action or proceeding affecting Dealer before any court, governmental agency or arbitrator other than as disclosed in the Application or as to subsequent Advances except as provided to KMFC in writing;
    (g) No financing statement covering any of the Inventory, naming any party other than KMFC or Kawasaki, is on file in any public office; and
    (h) The Statement of Identity, Required Documents, and Application are true, complete and correct in all respects.

7.  DEALER'S COVENANTS.
    So long as any of the Indebtedness is unpaid, Dealer covenants that:
    (a) Dealer shall repay to KMFC the full amount of the Indebtedness immediately upon KMFC's demand, or if no demand for full payment is made by KMFC then in accordance with the Agreement, all Monthly Statements, and any and all repayment or curtailment plans or programs in effect from time to time. Dealer shall pay to KMFC all amounts owing to KMFC with respect to each item of Inventory upon Dealer's sale or other disposition of such Inventory or at such other time as KMFC may prescribe in writing from time to time.
    (b) Dealer shall perform all of its obligations and duties under this Agreement and the other Required Documents;
    (c) Dealer shall not, except in the normal course of Dealer's business and so long as no Event of Default has occurred hereunder, sell, transfer, lease, mortgage or otherwise dispose of any item of Inventory or any interest therein, or remove any item of Inventory from Dealer's premises or attempt any such sale, transfer, lease, mortgage, removal or other disposition of any item of Inventory, without KMFC's prior written consent;
    (d) Dealer shall comply with, and not permit any violation of, all applicable laws, ordinances, regulations and orders of all public authorities relating to any item of Inventory;
    (e) Dealer shall keep and maintain every item of Collateral in good repair, and safe condition, and shall not alter or substantially modify any item of Collateral, nor conceal any item of Collateral, nor permit any lien or encumbrance at any time to attach to any item of Collateral (except in favor of KMFC);
    (f) Dealer shall permit KMFC and its designees at all reasonable times to inspect Dealer's books, records and properties and to make copies or extracts from such books and records; and Dealer shall immediately upon KMFC's request, assemble and deliver or otherwise make available to KMFC at such location(s) as KMFC may require, all of Dealer's books, records and other data concerning the operations of Dealer and the Collateral;
    (g) Dealer shall repay all Advances and pay all other Charges when due;
    (h) Dealer shall pay all expenses, including attorneys' fees, incurred by KMFC in the perfection, preservation, realization, enforcement, interpretation and exercise of KMFC's rights, powers and remedies under this Agreement;
    (i) Dealer shall acquire and continuously maintain in full force and effect, at its sole expense, all insurance coverage as KMFC may require from time to time, including, without limitation, fire and extended coverage insuring the Collateral and Dealer's premises against all risks, and comprehensive general liability insurance, all in such form, content, coverage, amounts, limits, terms, and conditions as KMFC shall require from time to time, and issued by insurers approved or accepted by KMFC; and all such policies of insurance shall name KMFC as loss payee and/or additional insured, as KMFC shall determine in each case;
    (j) Dealer shall cooperate in every respect with KMFC's (or its designee's) inspection or audit of the Collateral as provided for in Section 12 herein;
    (k) Notwithstanding any inconsistent terms in any invoices or other documents, Dealer shall immediately pay all sums owing to KMFC upon the expiration or earlier termination of the Dealer Sales and Service Agreement in effect between Kawasaki and Dealer;

3

    (l)  Dealer shall timely perform its obligations under any and all leases or other contracts affecting or relating to operations of Dealer;

    (m)  If so requested by KMFC following the occurrence of an Event of Default, Dealer agrees to promptly assemble the Collateral at Dealer's place of business or at such other place designated by KMFC and deliver all such Collateral to KMFC upon demand. Dealer shall pay all transportation, storage, handling, insurance, security, administrative fees, expenses and costs incurred in connection therewith whether incurred by Dealer or KMFC;

    (n)  Dealer shall, at such times and from time to time and in such form as KMFC shall require, prepare and deliver to KMFC current, true, and complete Financial Statements and other information pertaining to Dealer's operations and to the financial condition of Dealer, of any and all guarantors or other sureties of Dealer's obligations to KMFC, and of any and all managers of the business or operations of Dealer, whether or not any such manager has an ownership interest in Dealer;

    (o)  Dealer shall promptly give written notice to KMFC of the following (and in no event more than five (5) calendar days after their respective occurrences):

        (i)  The occurrence of any Event of Default as defined in this Agreement or the other Required Documents;

        (ii)  The occurrence of any Event of Default under any agreements Dealer has with any other lender or financier of Dealer;

        (iii)  Each change in the location of Dealer, each Collateral storage facility, chief executive office if Dealer has more than one location, or mailing address of Dealer;

        (iv)  Each change in or addition to the name, tradenames, or type of business entity of Dealer or any of Dealer's shareholders or partners;

        (v)  The identification and terms of any and all financing Dealer obtains from any source other than KMFC; and

        (vi)  The occurrence of any change in the management, ownership or control of Dealer, whether or not such change constitutes an Event of Default, including without limitation, any change in the general manager of Dealer's business or operations, and Dealer shall provide KMFC with true and complete copies of all agreements and documents pertaining to all such transactions;

    (p)  If requested by KMFC, Dealer shall segregate and deposit into a separate deposit account for delivery to KMFC all proceeds of the sale or other disposition of Collateral; and

    (q)  Dealer shall execute and delivery to KMFC any and all UCC financing statements and other notices, filings and amendments thereto which KMFC deems to be necessary or appropriate in order to perfect, establish and/or modify KMFC's security interest in the Collateral and its rights and remedies with respect thereto.

    8.  <u>POWERS OF KMFC</u>.

    Dealer hereby appoints KMFC as Dealer's attorney-in-fact to perform any of the following acts, which appointment is coupled with an interest, is irrevocable until repayment of all Indebtedness and termination of this Agreement, and may be exercised from time to time by KMFC's officers, agents, or employees, whether or not Dealer is in default:

    (a)  Perform any obligation of Dealer hereunder, in Dealer's name or otherwise;

    (b)  Give notice to third parties of KMFC's rights under this Agreement in and to the Collateral, to enforce the same, and make extension or modification agreements with respect thereto;

    (c)  Release persons liable on proceeds from any Collateral and give receipts and acquittances and compromise disputes in connection therewith;

    (d)  Release any or all security for the Indebtedness or security for any guaranty of the Indebtedness;

    (e)  Take possession of and otherwise enforce and/or resort to any and all security in any order, including, but not limited to, security for any guaranty of the Indebtedness;

    (f)  Prepare, execute, file, record or deliver notes, assignments, schedules, designation statements, financing statements, continuation statements, termination statements, statements of assignment, applications for registration or like papers to perfect, preserve or release KMFC's interest in any of the Collateral;

    (g)  Take cash, instruments for the payment of money, and other property to which Dealer or KMFC, as secured party, is entitled;

    (h)  Verify facts concerning the Collateral by inquiry of obligors thereon or retail purchasers or financers thereof, or otherwise, in KMFC's own name or a fictitious name, or in Dealer's name, or through KMFC's employees or agents, or anonymously;

    (i)  Endorse, collect, deliver and receive payment under instruments for the payment of money constituting or relating to proceeds from any of the Collateral;

    (j)  Prepare, adjust, execute, deliver and receive payment under insurance claims; and KMFC may collect and receive payment of and endorse any instrument in payment of loss or returned premiums or any other insurance refund or return; and  KMFC may apply such amounts received by KMFC, at KMFC's sole discretion, toward repayment of the Indebtedness or replacement of the Collateral;

    (k)  Exercise any and all rights, powers and remedies that Dealer would have, but for this Agreement, with respect to any and all of the Collateral subject to this Agreement; and

    (l)  Do all acts and things and execute all documents in the name of Dealer or otherwise deemed by KMFC as necessary, proper or convenient to preserve, perfect or enforce KMFC's rights under this Agreement.

    9.  <u>POSSESSION AND SALE OF INVENTORY</u>.

    Dealer's possession of the Inventory shall be for the sole purpose of storing and exhibiting the same for sale to retail purchasers in the ordinary course of Dealer's business. Except as may be necessary to remove or transport the same from a freight depot to the Dealer's place of business or in the ordinary course of sale, Dealer shall not:

    (a)  Use or operate, or permit the use or operation of. any item of Inventory for hire or otherwise without KMFC's prior written consent in each case;

    (b)  In any event use any item of Inventory illegally or improperly or for any illegal, unlawful or hazardous purpose or activity; or

    (c)  Without KMFC's prior written consent. deliver possession of any unit(s) of inventory sold to any retail purchaser in the ordinary course of business prior to Dealer's actual receipt of cash proceeds of such sale.

10. **EVENTS OF DEFAULT.**

Without limiting the rights or remedies of KMFC otherwise at law or in equity, each of the following shall constitute an "Event of Default" under this Agreement:

(a) Dealer or Guarantor fails to pay any of the Indebtedness when due or fails to perform any obligations of or to comply with any terms or conditions binding upon Dealer hereunder, under any of the other Required Documents, or otherwise;

(b) Dealer's or Guarantor's failure to perform any covenant, condition, or term contained or incorporated in this Agreement or any other Required Document, including, but not limited to, providing Financial Statements, reports or other documents or instruments promptly following request therefor by KMFC;

(c) Dealer's failure to pay any Indebtedness when due or Dealer's failure to perform any obligation owing to any trade creditor, lender or financier of Dealer other than KMFC, or if any manufacturer or distributor (including, without limitation, Kawasaki) cancels or suspends any franchise, dealership or distributorship agreement with Dealer, or terminates or suspends credit facilities given to Dealer;

(d) Any warranty, representation or statement by Dealer, or by any guarantor or other surety of the obligations of Dealer to KMFC in connection with this Agreement or any other Required Document, or at any time thereafter, was false or misleading to any extent when made;

(e) Dealer sells (except as permitted in Section 9 herein) or permits the encumbrance of any item of Inventory, or permits the making of any levy, seizure or attachment thereon;

(f) Inability of Dealer to pay its debts as they mature; any material adverse change in the financial condition of Dealer, any guarantor of the Indebtedness, or of any general manager of Dealer, or in the results of Dealer's operations, in the opinion and judgment of KMFC; insolvency, appointment of a receiver for Dealer; commencement of any proceeding under any bankruptcy or insolvency law by or against Dealer; any order of attachment, execution, sequestration or other order in the nature of a writ is levied on any item of Inventory;

(g) If Dealer is or becomes a corporation or a partnership, dissolution of Dealer, merger or consolidation of Dealer with or into another entity, or material change in the ownership of Dealer (a material change shall be deemed to have occurred upon the transfer or encumbrance, voluntarily or involuntarily, of more than 25% of the voting stock of any corporation, more than 25% of the partnership interests of any partnership, or 25% of the beneficial interest of any trust, any of the foregoing occurring as a cumulative result of one or more transactions or series of transactions);

(h) Revocation, or attempted revocation, by any guarantor, shareholder, creditor, or surety of any guaranty, subordination agreement, or similar agreement pertaining to the obligations of Dealer, or the death or permanent disability of any individual guarantor or of Dealer;

(i) If Dealer announces Dealer's intention to cease doing business as an authorized Kawasaki dealer, or to substantially modify or curtail its operations as such, with or without the existence of any monetary default, or Dealer takes any action to cease or abandon the operation of its business in whole or substantial part, or commits any other anticipatory breach or act of repudiation with respect to Dealer's obligations under this Agreement;

(j) KMFC, in good faith, deems itself insecure or believes that the Collateral is being misused or deteriorating in value through acts or omissions of Dealer; or

(k) Dealer replaces or appoints a general manager (or other officer, agent, or employee of Dealer having duties and responsibilities substantially similar to those of a general manager) of the business or operations of Dealer, without prior written notification to KMFC, or KMFC determines itself to be insecure as a result of such appointment, or KMFC determines, in its sole opinion and judgment, that such appointment may create or increase any risk of default or breach of any covenant, term, or condition of this Agreement or may otherwise impair KMFC's security.

11. **REMEDIES.**

(a) Whenever an Event of Default shall occur, or at any time thereafter (unless the default has been waived by KMFC in writing or cured by Dealer and such cure is accepted by KMFC), KMFC, at its option and without demand or notice of any kind, may:

(i) Declare all Indebtedness immediately due and payable;

(ii) Repossess any or all Inventory and any other Collateral;

(iii) Take all other steps to collect the Indebtedness as allowed under the Required Documents or under all applicable state and federal laws, including, but not limited to, one or more public or private sales or other dispositions of repossessed Inventory or other Collateral. KMFC shall have the sole and express right to designate the place where private or public sale or other disposition of Collateral shall occur, and such place may be either within or outside the county or state where Dealer is located or where the Collateral was located when repossessed. Dealer shall assume all risks and pay all costs (including attorneys' fees and expenses) KMFC incurs in enforcing KMFC's rights and remedies under this Agreement and under any other Required Document, including those costs and expenses KMFC incurs in enforcing its rights as a creditor, secured or otherwise, in bankruptcy proceedings. Such costs shall include, but are not limited to, transportation, storage, handling, insurance, auctioneers, administrative and safekeeping. Dealer agrees and consents that KMFC shall have no obligation to exercise any degree of care to store, secure, safeguard, handle, insure, transport or otherwise deal with the Collateral beyond that which KMFC ordinarily employs for its own account;

(iv) Elect not to terminate this Agreement or to declare all Indebtedness immediately due and payable but suspend any and all further Advances pursuant to this Agreement until such Event of Default has been cured and/or to require an orderly liquidation of the Collateral;

(v) Reduce the Credit Limit to an amount KMFC determines, in its sole discretion, is warranted under the circumstances; and

(vi) Exercise any and all other rights or remedies available to a secured creditor at law or in equity.

(b) KMFC's remedies are cumulative and not exclusive and may be exercised in any order and/or successively.

12. **FLOOR AUDITS.**

Dealer hereby authorizes KMFC and its designee or auditor from time to time and at all reasonable times during Dealer's regular business hours, without prior notice to Dealer, to examine, appraise and verify the existence and condition of the Collateral, and all documents, commercial or other paper and other property in which KMFC has or has had any title, title retention, lien, security or other interest or which may constitute proceeds or products of Collateral.

13. MISCELLANEOUS.

(a) Waivers, Etc. Dealer hereby waives presentment, protest, notice of protest, notice of dishonor or notice of nonpayment with respect to KMFC's demand for Dealer to pay the Indebtedness, and Dealer further waives any defense arising by reason of any disability or other defense of any other person or by reason of the cessation from any cause whatsoever of the liability of any other person to KMFC. Dealer also waives any right to direct the application of payments or security for any of the Indebtedness. KMFC may apply any payment or the proceeds of any security to the Indebtedness in any order, priority or manner KMFC desires, in its sole discretion.

(b) No Third Party Beneficiaries; Assignment. This Agreement is made and entered into for the sole protection and benefit of the parties hereto, and no other person or entity shall be a direct or indirect beneficiary of, or have any direct or indirect cause of action or claim, in connection with this Agreement or the other Required Documents. KMFC may assign its rights under this Agreement and the other Required Documents. Dealer may not assign its rights or obligations under this Agreement or the Required Documents without the prior written approval of KMFC.

(c) No Course of Conduct. At no time shall Dealer's or KMFC's prior or subsequent course of conduct limit, impair or otherwise adversely affect any of KMFC's rights or remedies in connection with this Agreement or the other Required Documents, or detract from or otherwise affect the literal interpretation and effect of this Agreement or the other Required Documents, since the parties hereto agree that this Agreement and the other Required Documents shall only be amended by written instruments executed by the parties, as provided herein. However, notwithstanding the foregoing, the parties expressly agree that periodic bulletins, notices or publications (collectively, "Change Bulletins") issued by KMFC which give changes in the Finance Charge or in the terms of credit to be extended by KMFC to dealers shall be deemed an amendment to this Agreement without the signature of KMFC or Dealer thereon. Continuing Advances made from and after the effective date of any Change Bulletins shall be deemed to be acceptance of and an agreement to any and all revised terms stated in the Change Bulletins.

(d) No Offset. Dealer shall not under any circumstances fail or delay to perform (or resist the enforcement of) any of Dealer's obligations to KMFC in connection with this Agreement or any of the other Required Documents because of any alleged offsetting claim or cause of action against KMFC (or any indebtedness or obligation of KMFC) that has not been confirmed in a final judgment of a court of competent jurisdiction (sustained on appeal, if any) against KMFC, and Dealer hereby waives any such right of setoff (or offset) that it might otherwise have with respect to any such claims or causes of action against KMFC or any such obligations or indebtedness of KMFC, unless and until such right of setoff (or offset) is confirmed and liquidated by such a final judgment.

(e) Acceptance; California Law Governs. This Agreement shall be made when KMFC accepts it at KMFC's principal place of business in California. This Agreement shall be governed by and construed in accordance with California law. KMFC qualifies as an "exempt lender" under California law, which status affects the rate of Finance Charge which KMFC may charge. If and to the extent any court refuses to apply California law to this Agreement as the parties have intended and agreed hereby, then the usury laws of the applicable state law shall apply, and Dealer shall be liable to KMFC for the Indebtedness up to the maximum amount allowed under that state's usury laws. To the extent such maximum rate is less than the amounts KMFC is permitted to charge Dealer under California law and which KMFC has charged Dealer under this Agreement, KMFC will credit the principal amount owed KMFC by Dealer for such excess amount. Dealer shall remain liable to KMFC for all other amounts and Charges.

(f) Time of Essence. Time is of the essence in every provision of this Agreement and the other Required Documents.

(g) Enforceability. If any provision of this Agreement or any of the other Required Documents shall for any reason be determined by a court of competent jurisdiction (sustained on appeal, if any) to be unenforceable in any respect, such unenforceability shall not affect any other provision hereof, and this Agreement and the other Required Documents shall be construed as if such unenforceable provision had not been contained herein.

(h) Enforcement. If KMFC or Dealer shall bring or participate in any legal action or proceeding to enforce, interpret, defend or construe any provision of this Agreement, including any action to enforce a judgment hereunder or to prosecute or defend any appeal, then the prevailing party shall recover from the other party (or parties) to such action or proceeding all reasonable legal expenses and costs (including attorneys' fees) that it may incur in connection with such action or proceeding.

(i) Amendments. Except as set forth in paragraph 13(c) above, this Agreement contains (or incorporates) the entire agreement of the parties hereto with respect to the matters discussed herein, and this Agreement may only be modified or amended by a written instrument executed by each of the parties hereto.

(j) Indulgence Not Waiver. No failure to exercise and no delay in exercising any right, power or privilege hereunder on the part of KMFC shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege. No waiver shall affect any default or Event of Default other than the default or Event of Default specified in the waiver, and such waiver shall be operative only for the time and to the extent stated therein.

(k) Prohibition of Oral Consents. In every instance where this Agreement requires the consent of KMFC to an act or omission of Dealer or to the existence of some fact, circumstance or event, KMFC shall only be deemed to have given its consent when a duly authorized officer of KMFC expresses consent in a written notice to Dealer as provided in this Agreement, and no oral consent of any kind, nature or character shall be effective for any purpose whatsoever.

(l) Survival of Warranties. All representations, warranties, covenants and agreements of Dealer contained herein shall survive the delivery of this Agreement and shall continue in full force and effect until the full and final payment and performance of all the Indebtedness. Any breach of any representation or warranty shall create an obligation by Dealer to immediately cure the breach, restore KMFC to the full rights and interests that it had expected pursuant to that representation or warranty, and to otherwise fully compensate KMFC for the consequences of the breach.

(m) Notices. All notices given hereunder shall be transmitted to the addresses below or any other address that a party may designate by written notice to the other parties:

KMFC:
KAWASAKI MOTORS FINANCE
CORPORATION
P. O. Box 25301
Santa Ana. CA 92799-5301
ATTENTION: General Manager

DEALER:
as stated immediately above Dealer's signature

All such notices shall be deemed to have been given at the time of actual delivery, or on the third business day after date of mailing, when sent by first class mail, postage prepaid, or in case of telegraphic notice, when delivered to the telegraphic company, charges prepaid, whichever shall first occur.

(n)  Indemnity.  Dealer shall indemnify KMFC against and hold KMFC harmless from, any and all losses, damages (whether general, punitive or otherwise), liabilities, claims, causes of action (whether legal, equitable or administrative), judgments, court costs and legal or other expenses (including attorneys' fees) that KMFC may suffer or incur as a direct or indirect consequence of:

    (i)  KMFC's performance of this Agreement, including, without limitation, KMFC's exercise or failure to exercise any rights, remedies or powers in connection with this agreement;

    (ii)  The failure of Dealer to perform any of its obligations as and required by this Agreement, including, without limitation, any failure, at any time, of any representation or warranty of Dealer to be true and correct and any failure by Dealer to satisfy any condition;

    (iii)  Any claim or cause of action of any kind by any person or entity to the effect that KMFC is in any way responsible or liable for any act or omission by Dealer, whether on account of any theory of derivative liability or otherwise; or

    (iv)  Any claim or cause of action of any kind by any person or entity to the effect of denying KMFC the full benefit or protection of any provision of this Agreement.  KMFC's rights of indemnity shall not be directly or indirectly limited, prejudiced, impaired or eliminated in any way by finding or allegation that KMFC's conduct is active, passive or subject to any other classification or that KMFC is directly or indirectly responsible under any theory of any kind, character or nature for any act or omission by Dealer or any other person or entity, except KMFC.

(o)  Further Assurances.  Dealer will prepare, execute and deliver such additional documents as KMFC may reasonably request from time to time necessary for KMFC to determine, establish, perfect, supplement, and enforce its rights as described in this Agreement.

(p)  Assets in Trust.  To the extent Dealer or any guarantor, or any officer, partner, agent or employee of Dealer, fails to pay any proceeds from the sale of any inventory immediately upon receipt to KMFC, Dealer agrees to hold all such proceeds in trust for KMFC's benefit until complete payment of all indebtedness.

(q)  Signature by Dealer.  This Agreement shall be executed on behalf of Dealer by the owner in case of a sole proprietorship, by a general partner in case of partnership, or by a duly authorized officer in case of a corporation, showing position or title of the person signing.

(r)  Contact with other Dealers or Manufacturers.  If an Event of Default occurs or if this Agreement is modified or terminated, Dealer authorizes KMFC to notify Kawasaki and other distributors or manufacturers with respect to such Event of Default, modification or termination, in KMFC's sole opinion and discretion. Any such notification will be absolutely privileged and will not be deemed to be or to constitute interference with the business, operations, or contractual or prospective economic relations of Dealer or be an invasion of any right of privacy Dealer or any guarantor may have.

(s)  Relationship With Kawasaki.  Dealer acknowledges that KMFC is a wholly owned subsidiary of Kawasaki and that KMFC may from time to time, as an independent contractor, perform certain services for Kawasaki in connection with the dealership relationship between Kawasaki and Dealer. Dealer agrees that all obligations of dealer owing to KMFC are and shall remain fully enforceable by, and due, owing, and payable to, KMFC in accordance with the provisions of this Agreement, and shall not be subject to, or reduced, diminished, or offset by, any claim, defense, allegation, or cause of action, at law or in equity, (herein after collectively "Claims") which Dealer may have or assert against Kawasaki arising out of any act or omission by Kawasaki, any alleged agency or other relationship between KMFC and Kawasaki, or in connection with any such services provided by KMFC to Kawasaki. Dealer hereby releases and holds harmless KMFC from and against any and all such Claims, and all costs and expenses relating thereto, and waives any and all rights Dealer may have to assert such Claims against KMFC in any judicial or administrative proceeding or to pursue any other remedy which would have the effect of disregarding the corporate separateness existing between KMFC and Kawasaki.

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year hereinafter written.

Dealer is:  CORPORATION

Kawasaki Dealer Number:  1276-4

DEALER

CBL ENTERPRISES, INC.

DBA/KAWASAKI-YAMAHA AND MARINE OF CAPE COD

Address:  405 WEST MAIN STREET, HYANNIS, MA 02601

152 RIDGEWOOD AVENUE, HYANNIS, MA 02601

KMFC

KAWASAKI MOTORS FINANCE CORPORATION

Signature:

Position/Title:  MANAGER, CREDIT SERVICES

DATED:  11-6-95

Signature:  Christine B. Largey

Position/Title:  PRESIDENT

Signature:

Position/Title:

DATED:  October 31, 1991

GS Printed in U.S.A. D:KMFC 92-1195

7

**KAWASAKI MOTORS FINANCE CORPORATION**

RECEIVED

# DEALER INFORMATION UPDATE AGREEMENT

APR 10 2000

Kawasaki Motors
Finance Corporation

This AGREEMENT is made and entered into on ___4~2~00___, by CBL ENTERPRISES, INC. ("Dealer"), KAWASAKI MOTORS FINANCE CORPORATION ("KMFC") and all Guarantors ("Guarantors") of Dealer's obligations to KMFC

WHEREAS, Dealer has previously entered into a Financing and Security Agreement ("Security Agreement") with KMFC dated **OCTOBER 31, 1995**, and

WHEREAS, Guarantors have previously entered into Continuing Guaranties of Dealer's indebtedness to KMFC, and

WHEREAS, certain information concerning the Dealer and/or its business operations has changed, as indicated below, and

WHEREAS, all parties agree that reflecting these changes in the documentation of KMFC's security interest in Dealer's assets is mutually beneficial,

NOW THEREFORE, in light of the above (and for good and valuable consideration, receipt of which is hereby acknowledged), the undersigned hereby agree

__X__    The Financing and Security Agreement, and all guaranties of the obligations thereunder, are hereby modified to reflect that fact that Dealer is now doing business as

      **CBL ENTERPRISES, INC.**
      **KAWASAKI OF CAPE COD**

__X__    Dealer's address has changed to the following

      **92 BARNSTABLE ROAD, HYANNIS, MA   02601-5526**

__—__    The Financing and Security Agreement and all guaranties of Dealer's obligations to KMFC are hereby modified to reflect the fact that the following additional items of collateral are subject to KMFC's security interest

Nothing in this AGREEMENT shall be construed to diminish KMFC's security interest in Dealer's assets, or to alter in any way the priority of that security interest   Dealer and Guarantors agree that the Financing and Security Agreement and all guaranties of the Dealer's indebtedness to KMFC are now and continue to be valid and fully enforceable, and are hereby reaffirmed in all respects


* U P D T 5 *

1654        04/02/0C

Nothing in this AGREEMENT shall be construed to be a waiver of or consent to any events of default which have occurred or which may occur in the future under the Financing and Security Agreement and/or guaranties, and this AGREEMENT is not intended to be, nor shall it be construed as, a novation or an accord and satisfaction

IN WITNESS WHEREOF, the undersigned have caused this AGREEMENT to be executed and delivered as of the date first written above

**KAWASAKI MOTORS FINANCE CORPORATION**

By _____ (Signature)
PETER LECH

Its _____ (Title)
MANAGER, CREDIT SERVICES

**DEALER**    CBL ENTERPRISES, INC.
KAWASAKI OF CAPE COD

By _____ (Signature)

Its _____ (Title)

**GUARANTORS**

_____ (Signature)
ROBERT J SCOZZARI

_____ (Signature)
ALFRED J. BALERNA

_____ (Signature)
HARRIET S BALERNA

_____ (Signature)
LINDA B SCOZZARI

_____ (Signature)
CHRISTINA BRINE LARGAY

_____ (Signature)
JOHN ARTHUR LARGAY, JR

Dealer Number    M 654

2

# KAWASAKI MOTORS FINANCE CORPORATION
# FINANCING AND SECURITY AGREEMENT

R E C E I V E D

NOV 6 1995

KMFC

## STATEMENT OF IDENTITY

**DEBTOR/DEALER:**

DEBTOR/DEALER LEGAL NAME:    **CBL ENTERPRISES, INC.**

DEBTOR/DEALER FICTITIOUS NAME:    **DBA/KAWASAKI-YAMAHA AND MARINE OF CAPE COD**

PRINCIPAL ADDRESS:    **405 WEST MAIN STREET, HYANNIS, MA  02601**
**152 RIDGEWOOD AVENUE, HYANNIS, MA  02601**

KAWASAKI MOTORS FINANCE CORPORATION NUMBER:    1276–4

The above information is accurate and current.

**SIGNATURES:**
(To be signed by all parties signing Agreement.)

_Christina B. Langley_
Debtor/Dealer's Signature

_____
Debtor/Dealer's Signature

_____
Debtor/Dealer's Signature

_____
Debtor/Dealer's Signature

# **EXHIBIT 2**

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code

3. Maturity date (if any):

1 Debtor(s) (Last Name First) and address(es)

CBL ENTERPRISES, INC.
DBA/KAWASAKI-YAMAHA AND MARINE OF
CAPE COD
405 WEST MAIN STREET
HYANNIS, MA 02601
152 RIDGEWOOD AVENUE, HYANNIS, MA 02601

2 Secured Party(ies) and address(es)

KAWASAKI MOTORS FINANCE CORPORATION
P. O. BOX 25301
SANTA ANA, CA 92799-2326

For Filing Officer (Date, Time, Number, and Filing Office)

001070

TOWN CLERK

95 NOV 20 PM 2:26

BARNSTABLE

BARNSTABLE C#4-264

4 This financing statement covers the following types (or items) of property:

PLEASE SEE ATTACHED EXTENSION SHEET FOR
APPROPRIATE STATEMENT OF COLLATERAL.

5. Assignee(s) of Secured Party and Address(es)

Check ☒ if covered:     ☒ Proceeds of Collateral are also covered     ☒ Products of Collateral are also covered. No. of additional sheets presented: 1

Filed with:  BARNSTABLE COUNTY REGISTER OF DEEDS

CBL ENTERPRISES, INC.

By: Christina B. Langan
        Signature(s) of Debtor(s)

DEBI CARSTENSEN/KAWASAKI MOTORS FINANCE CORPORATION

By: Debi Carstensen
        Signature(s) of Secured Party(ies)

FILING OFFICER COPY-ALPHABETICAL

STANDARD FORM — UNIFORM COMMERCIAL CODE — FORM UCC-1

STATE OF MASSACHUSETTS

REORDER FROM
Registro, Inc.
514 PIERCE ST.
P.O. BOX 238
ANOKA, MN. 55303
(612) 421-1713

## EXTENSION SHEET FOR UNIFORM COMMERCIAL CODE FINANCING STATEMENTS

STATE OF __MASSACHUSETTS__    TOTAL NUMBER OF SHEETS  _2_

CONTINUATION OF FINANCING STATEMENT BETWEEN

**DEBTOR:**
CBL ENTERPRISES, INC.
DBA/KAWASAKI-YAMAHA AND MARINE OF CAPE COD
405 WEST MAIN STREET
HYANNIS, MA  02601

152 RIDGEWOOD AVENUE
HYANNIS, MA  02601

**SECURED PARTY:**
KAWASAKI MOTORS FINANCE CORPORATION
P. O. BOX 25301
SANTA ANA, CA  92799-5301

Debtor hereby Grants to SECURED PARTY a continuing security interest in:  All of the following personal property and related rights in which Debtor now has or owns, or may later acquire, rights or other interests, now existing or hereafter created or arising, and wherever located:  (i)  all motorcycles, all-terrain vehicles, watercraft, utility vehicles, generators, and all other inventory, equipment, or goods financed by Secured Party, together with all improvements, replacements, or additions thereto, and all proceeds from the sale or disposition of any of the above (including insurance premiums and insurance payments to Debtor); and (ii)  all other inventory, equipment, goods machinery, furniture, fixtures, vehicles, accounts, accounts receivables, instruments, deposit accounts, notes, chattel paper, rebates, incentive payments, contracts, and other rights to payment and general intangibles, together with all improvements, replacements or additions thereto, and all proceeds from the sale or disposition of any of the above (including insurance proceeds and insurance payments to Debtor).

# EXHIBIT 3



**Kawasaki Motors Finance Corporation**

* C G 5 *

## Continuing Guaranty

Kawasaki Motors
Finance Corporation

1  **Indebtedness Guaranteed**  For valuable consideration, the undersigned ("Guarantor") irrevocably and unconditionally guarantees and promises to pay to Kawasaki Motors Finance Corporation ("KMFC"), or order, on demand, when due whether by acceleration or otherwise, in lawful money of the United States in cash or in immediately available funds acceptable to KMFC, any and all indebtedness (the "Indebtedness") of CBL ENTERPRISES, INC  ("Dealer") to KMFC  The word "Indebtedness" is used herein in its most comprehensive sense and includes any and all advances (including interest thereon), debts, obligations, and liabilities of Dealer heretofore, now or hereafter made, incurred or created, whether voluntary or involuntary, and however arising, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, and whether Dealer may be liable individually or jointly with others or whether recovery upon such Indebtedness may be now, or later become, barred by any statute of limitations, or whether such Indebtedness may be or later become otherwise unenforceable, and any and all amendments, modifications, renewals or extensions of any Indebtedness, including, but not limited to, those which are evidenced by new or additional instruments or agreements

2  **Continuation and Renewal**  This Continuing Guaranty ("Guaranty") relates to all Indebtedness, including that arising after any repayment and reborrowing and under successive transactions, which shall either continue or increase the Indebtedness or from time to time renew it after it has been satisfied  The liability of Guarantor shall be for the full amount due KMFC at any time and from time to time, and shall include principal, together with all interest upon the Indebtedness, and any and all charges of KMFC to Dealer  Guarantor hereby agrees that KMFC may grant such renewals, extensions, variations, waivers and releases without further notice to or authority from Guarantor and without affecting KMFC's rights or Guarantor's obligations hereunder  This Guaranty is a continuing guaranty and is without limitation as to its effective period, and the obligations hereunder may be terminated only upon payment in full of all Indebtedness  This Guaranty shall not constitute a commitment of any nature whatsoever, by KMFC to renew or hereafter extend credit to Dealer or Guarantor

3  **Independent Obligations**  The obligations hereunder are independent of the obligations of Dealer and any guarantor that has executed and delivered, or may hereafter execute and deliver, a separate guaranty  A separate action or actions may be brought and prosecuted against Guarantor, whether an action is brought against Dealer or any other guarantor, or whether Dealer or any other guarantor is joined in any such action or actions  Guarantor waives the benefit of any statute of limitations affecting Guarantor's liability hereunder or the enforcement thereof to the fullest extent allowed by law and further waives all compensation of cross-demands pursuant to California Code of Civil Procedure Section 431 70  This Guaranty is not given in reliance upon any guaranty being received or effective from any other person(s), and the release, death of or revocation by any other guarantor shall not operate to release or otherwise affect the continuing liability of Guarantor hereunder  All of KMFC's rights are cumulative and not exclusive, and any later executed guaranty shall not operate to supersede or replace this Guaranty

4  **Reinstatement of Liability**  The liability of Guarantor hereunder shall be reinstated and revived, and the rights of KMFC shall continue with respect to any amount paid by Dealer on account of the Indebtedness that shall thereafter be required to be restored or returned by KMFC upon the bankruptcy, insolvency or reorganization of Dealer or for any other reason, all as though such amount had not been paid

5  **Representations and Warranties**  Guarantor represents and warrants that  (a) KMFC has made no representation to Guarantor as to the creditworthiness of Dealer, and (b) Guarantor has established adequate means of obtaining from Dealer, on a continuing basis, financial and other information pertaining to Dealer's financial condition, operations, management, and payment of the Indebtedness  Guarantor agrees to keep adequately informed of any facts, events or circumstances that might in any way affect Guarantor's risks hereunder, and Guarantor further agrees that KMFC shall have no obligation to disclose to Guarantor information or material acquired in the course of KMFC's relationship with Dealer

6  **KMFC's Authority**  Guarantor authorizes KMFC without notice or demand, without any separate or additional authorization from Guarantor and without affecting Guarantor's liability hereunder or affecting KMFC's rights, from time to time (a) to renew, compromise, extend, vary, accelerate or otherwise change the time for payment of, or otherwise change the terms of any Indebtedness, or any part thereof, including any increase or decrease of the rate of interest thereon, (b) to take and hold security for payment of this Guaranty or the Indebtedness guaranteed, and exchange, enforce, waive and release any such security, (c) to apply such security and direct the order or manner of sale thereof as KMFC in its sole discretion may determine, (d) to release or substitute any guarantor, obligor or endorser that has delivered a separate guaranty of Indebtedness, (e) to accept partial payments, and (f) to accept new or additional documents or instruments relating to the Indebtedness  KMFC may, without notice, assign this Guaranty in whole or in part

7  **Waivers**  Guarantor waives any right to require KMFC to proceed against Dealer, proceed or exhaust any security held from Dealer, or pursue any other remedy in KMFC's power whatsoever, including, without limitation, proceeding against any other guarantor of Indebtedness or exhausting KMFC's remedies under any other guaranty of Indebtedness  Guarantor waives any defense arising by reason of any disability or other defense of Dealer or by reason of the cessation from any cause of the liability of Dealer until all Indebtedness of Dealer to KMFC shall have been paid in full, even though such Indebtedness is in excess of the Guarantor's liability hereunder  Guarantor shall have no right to subrogation and Guarantor waives any right to enforce any remedy which KMFC now has or may hereafter have against Dealer  Guarantor further waives any benefit of, and any right to participate in , any security now or hereafter held by KMFC  Guarantor shall be liable to KMFC for any deficiency resulting from KMFC's exercise of its rights or remedies, even though any rights which Guarantor may have against others, including, but not limited to, subrogation rights, may be diminished or destroyed as a result of KMFC's action  Guarantor further waives all presentments, demands for performance, notices of nonperformance, protests, notices of protests, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation, or incurring of new or additional Indebtedness  Guarantor waives the benefit of any statute of limitations affecting Guarantor's liability hereunder or the enforcement thereof

8  **Subordination**  Any indebtedness or claim against Dealer now or hereafter held by Guarantor is hereby subordinated to the Indebtedness of Dealer to KMFC  Any such indebtedness of Dealer to Guarantor, if KMFC so requests, shall be collected, enforced and received by Guarantor as trustee for the benefit of KMFC and be paid over to KMFC on account of Indebtedness of Dealer to KMFC, without reducing or affecting in any manner the liability of Guarantor under this Guaranty

9  **Obligations of Married Persons**  Any married person who signs this Guaranty hereby expressly agrees that recourse may be had against his or her separate and community property for all of his or her obligations under this Guaranty

1654      04/02/00

10    Interpretation and Applicable Law   In all cases in which there is but a single Dealer or Guarantor, all words used herein in the plural shall be deemed to have been used in the singular where the context and construction so require, and when there is more than one Dealer or Guarantor named herein, the word "Dealer" and "Guarantor," respectively, shall mean all and any one or more of them   This Agreement shall become effective when KMFC accepts it at KMFC's principal place of business in California, and this Agreement shall be governed and construed in accordance with the laws of the State of California

11    Guarantor's Authority, Successors and Assigns   Where one or more of Dealer or Guarantor are corporations or partnerships it is not necessary for KMFC to inquire into the power of Dealer, Guarantor or their respective officers, directors, partners, or agents acting, or persons purporting to act, on their behalf, and any Indebtedness or guaranty made or created in reliance upon the professed exercise of such power shall be guaranteed hereunder   This Guaranty shall bind the successors and assigns of Guarantor and shall inure to the benefit of KMFC and its successors and assigns

12    Attorneys' Fees   Guarantor agrees to pay reasonable attorneys' fees and all other costs and expenses which may be incurred by KMFC in the collection or enforcement of Guarantor's obligations pursuant to this Guaranty or the Indebtedness, whether or not suit is filed   The prevailing party in any action or proceeding to enforce this Guaranty shall be entitled to an award for reasonable attorneys' fees and court costs, including execution or enforcement of any judgment and any and all appeals therefrom   All such amounts due KMFC shall be paid immediately, upon demand by KMFC, and if not paid when so demanded, shall bear interest at the highest rate allowed by law

13    Entire Agreement   This Guaranty constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof and no modification or change in any of the terms and conditions shall be effective unless in writing and signed by KMFC   In the event any provision hereof shall be held by a court of competent jurisdiction to be invalid or unenforceable, the remainder of said provision (to the extent the same is not held to be invalid or unenforceable) and all other provisions of this Guaranty shall not be affected thereby and shall remain valid, enforceable, and binding upon Guarantor as herein provided

14    Reliance by KMFC   Guarantor acknowledges that KMFC has extended, or may in the future extend, credit to Dealer in reliance on Guarantor's unconditional promise to repay all present and future Indebtedness of Dealer to KMFC, and that the waivers, warranties and promises made by Guarantor in this Guaranty are required to establish Guarantor's unconditional liability to KMFC   Therefore, Guarantor agrees that each of the waivers, warranties and promises set forth in this Guaranty are made with Guarantor's understanding of their significance and consequences and that they are reasonable   If any waivers, warranties and promises are determined to be contrary to any applicable law or public policy, such waivers, warranties and promises, and all other provisions of this Guaranty shall be effective to the maximum extent permitted by law

Executed by the undersigned Guarantor this _2 nd_ day of _April_  _2000_

GUARANTOR

(Signature)                                          Address   34 REGIS ROAD
                                                               EAST FALMOUTH, MA   02540
ROBERT J SCOZZARI

Social Security No    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                    Kawasaki Dealer Number

                                                     1654 - 5

### [ALL SIGNATURES MUST BE NOTARIZED]

STATE OF _Massachusetts_            )
                                    )  SS
COUNTY OF _Barnstable_              )

On _April 2, 2000_ before me, the undersigned Notary Public, in and for said County and State, personally appeared ROBERT J  SCOZZARI, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted executed the instrument

WITNESS my hand and official seal

Signature _Jayne Zerus_

                                                     (Seal)

2

# EXHIBIT 4

**Kawasaki Motors Finance Corporation**

## Continuing Guaranty

`* C G 5 *`

Kawasaki Motors
Finance Corporation

1  **Indebtedness Guaranteed**  For valuable consideration, the undersigned ("Guarantor") irrevocably and unconditionally guarantees and promises to pay to Kawasaki Motors Finance Corporation ("KMFC"), or order, on demand, when due whether by acceleration or otherwise, in lawful money of the United States in cash or in immediately available funds acceptable to KMFC, any and all indebtedness (the "Indebtedness") of CBL ENTERPRISES, INC  ("Dealer") to KMFC  The word "Indebtedness" is used herein in its most comprehensive sense and includes any and all advances (including interest thereon), debts, obligations, and liabilities of Dealer heretofore, now or hereafter made, incurred or created, whether voluntary or involuntary, and however arising, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, and whether Dealer may be liable individually or jointly with others or whether recovery upon such Indebtedness may be now, or later become, barred by any statute of limitations, or whether such Indebtedness may be or later become otherwise unenforceable, and any and all amendments, modifications, renewals or extensions of any Indebtedness, including, but not limited to, those which are evidenced by new or additional instruments or agreements

2  **Continuation and Renewal**  This Continuing Guaranty ("Guaranty") relates to all Indebtedness, including that arising after any repayment and reborrowing and under successive transactions, which shall either continue or increase the Indebtedness or from time to time renew it after it has been satisfied  The liability of Guarantor shall be for the full amount due KMFC at any time and from time to time, and shall include principal, together with all interest upon the Indebtedness, and any and all charges of KMFC to Dealer  Guarantor hereby agrees that KMFC may grant such renewals, extensions, variations, waivers and releases without further notice to or authority from Guarantor and without affecting KMFC's rights or Guarantor's obligations hereunder  This Guaranty is a continuing guaranty and is without limitation as to its effective period, and the obligations hereunder may be terminated only upon payment in full of all Indebtedness  This Guaranty shall not constitute a commitment of any nature whatsoever, by KMFC to renew or hereafter extend credit to Dealer or Guarantor

3  **Independent Obligations**  The obligations hereunder are independent of the obligations of Dealer and any guarantor that has executed and delivered, or may hereafter execute and deliver, a separate guaranty  A separate action or actions may be brought and prosecuted against Guarantor, whether an action is brought against Dealer or any other guarantor, or whether Dealer or any other guarantor is joined in any such action or actions  Guarantor waives the benefit of any statute of limitations affecting Guarantor's liability hereunder or the enforcement thereof to the fullest extent allowed by law and further waives all compensation of cross-demands pursuant to California Code of Civil Procedure Section 431 70  This Guaranty is not given in reliance upon any guaranty being received or effective from any other person(s), and the release, death or revocation by any other guarantor shall not operate to release or otherwise affect the continuing liability of Guarantor hereunder  All of KMFC's rights are cumulative and not exclusive, and any later executed guaranty shall not operate to supersede or replace this Guaranty

4  **Reinstatement of Liability**  The liability of Guarantor hereunder shall be reinstated and revived, and the rights of KMFC shall continue with respect to any amount paid by Dealer on Account of the Indebtedness that shall thereafter be required to be restored or returned by KMFC upon the bankruptcy, insolvency or reorganization of Dealer or for any other reason, all as though such amount had not been paid

5  **Representations and Warranties**  Guarantor represents and warrants that  (a) KMFC has made no representation to Guarantor as to the creditworthiness of Dealer, and (b) Guarantor has established adequate means of obtaining from Dealer, on a continuing basis, financial and other information pertaining to Dealer's financial condition, operations, management, and payment of the Indebtedness  Guarantor agrees to keep adequately informed of any facts, events or circumstances that might in any way affect Guarantor's risks hereunder, and Guarantor further agrees that KMFC shall have no obligation to disclose to Guarantor information or material acquired in the course of KMFC's relationship with Dealer

6  **KMFC's Authority**  Guarantor authorizes KMFC without notice or demand, without any separate or additional authorization from Guarantor and without affecting Guarantor's liability hereunder or affecting KMFC's rights, from time to time (a) to renew, compromise, extend, vary, accelerate or otherwise change the time for payment of, or otherwise change the terms of any Indebtedness, or any part thereof, including any increase or decrease of the rate of interest thereon, (b) to take and hold security for payment of this Guaranty or the Indebtedness guaranteed, and exchange, enforce, waive and release any such security, (c) to apply such security and direct the order or manner of sale thereof as KMFC in its sole discretion may determine, (d) to release or substitute any guarantor, obligor or endorser that has delivered a separate guaranty of Indebtedness, (e) to accept partial payments, and (f) to accept new or additional documents or instruments relating to the Indebtedness  KMFC may, without notice, assign this Guaranty in whole or in part

7  **Waivers**  Guarantor waives any right to require KMFC to proceed against Dealer, proceed or exhaust any security held from Dealer, or pursue any other remedy in KMFC's power whatsoever, including, without limitation, proceeding against any other guarantor of Indebtedness or exhausting KMFC's remedies under any other guaranty of Indebtedness  Guarantor waives any defense arising by reason of any disability or other defense of Dealer or by reason of the cessation from any cause of the liability of Dealer until all Indebtedness of Dealer to KMFC shall have been paid in full, even though such Indebtedness is in excess of the Guarantor's liability hereunder  Guarantor shall have no right to subrogation and Guarantor waives any right to enforce any remedy which KMFC now has or may hereafter have against Dealer  Guarantor further waives any benefit of, and any right to participate in , any security now or hereafter held by KMFC  Guarantor shall be liable to KMFC for any deficiency resulting from KMFC's exercise of its rights or remedies, even though any rights which Guarantor may have against others, including, but not limited to, subrogation rights, may be diminished or destroyed as a result of KMFC's action  Guarantor further waives all presentments, demands for performance, notices of nonperformance, protests, notices of protests, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation, or incurring of new or additional Indebtedness  Guarantor waives the benefit of any statute of limitations affecting Guarantor's liability hereunder or the enforcement thereof

8  **Subordination**  Any indebtedness of or claim against Dealer now or hereafter held by Guarantor is hereby subordinated to the Indebtedness of Dealer to KMFC  Any such Indebtedness of Dealer to Guarantor, if KMFC so requests, shall be collected, enforced and received by Guarantor as trustee for the benefit of KMFC and be paid over to KMFC on account of Indebtedness of Dealer to KMFC. without reducing or affecting in any manner the liability of Guarantor under this Guaranty

9  **Obligations of Married Persons**  Any married person who signs this Guaranty hereby expressly agrees that recourse may be had against his or her separate and community property for all of his or her obligations under this Guaranty

1654     04/02/00

10    Interpretation and Applicable Law  In all cases in which there is but a single Dealer or Guarantor, all words used herein in the plural shall be deemed to have been used in the singular where the context and construction so require, and when there is more than one Dealer or Guarantor named herein, the word "Dealer" and "Guarantor," respectively, shall mean all and any one or more of them  This Agreement shall become effective when KMFC accepts it at KMFC's principal place of business in California, and this Agreement shall be governed and construed in accordance with the laws of the State of California

11    Guarantor's Authority, Successors and Assigns  Where one or more of Dealer or Guarantor are corporations or partnerships it is not necessary for KMFC to inquire into the power of Dealer, Guarantor or their respective officers, directors, partners, or agents acting, or persons purporting to act, on their behalf, and any Indebtedness or guaranty made or created in reliance upon the professed exercise of such power shall be guaranteed hereunder  This Guaranty shall bind the successors and assigns of Guarantor and shall inure to the benefit of KMFC and its successors and assigns

12    Attorneys' Fees  Guarantor agrees to pay reasonable attorneys' fees and all other costs and expenses which may be incurred by KMFC in the collection or enforcement of Guarantor's obligations pursuant to this Guaranty or the Indebtedness, whether or not suit is filed  The prevailing party in any action or proceeding to enforce this Guaranty shall be entitled to an award for reasonable attorneys' fees and court costs, including execution or enforcement of any judgment and any and all appeals therefrom  All such amounts due KMFC shall be paid immediately, upon demand by KMFC, and if not paid when so demanded, shall bear interest at the highest rate allowed by law

13    Entire Agreement  This Guaranty constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof and no modification or change in any of the terms and conditions shall be effective unless in writing and signed by KMFC  In the event any provision hereof shall be held by a court of competent jurisdiction to be invalid or unenforceable, the remainder of said provision (to the extent the same is not held to be invalid or unenforceable) and all other provisions of this Guaranty shall not be affected thereby and shall remain valid, enforceable, and binding upon Guarantor as herein provided

14    Reliance by KMFC  Guarantor acknowledges that KMFC has extended, or may in the future extend, credit to Dealer in reliance on Guarantor's unconditional promise to repay all present and future Indebtedness of Dealer to KMFC, and that the waivers, warranties and promises made by Guarantor in this Guaranty are made with Guarantor's understanding of their significance and consequences and that they are reasonable  If any waivers, warranties and promises are determined to be contrary to any applicable law or public policy, such waivers, warranties and promises, and all other provisions of this Guaranty shall be effective to the maximum extent permitted by law

Executed by the undersigned Guarantor this _2nd_ day of _April_ , _2000_

GUARANTOR

_(Signature)_                                                        Address  34 REGIS ROAD
                                                                             EAST FALMOUTH, MA  02540
LINDA B  SCOZZARI

Social Security No  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                    Kawasaki Dealer Number  **1654 - 5**

[ALL SIGNATURES MUST BE NOTARIZED]

STATE OF _Massachusetts_          )
                                           )  SS
COUNTY OF _Barnstable_            )

On _April 2, 2000_ before me, the undersigned Notary Public, in and for said County and State, personally appeared LINDA B  SCOZZARI, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted executed the instrument

WITNESS my hand and official seal

Signature  _Jayne Zenus_

                                                                             (Seal)

2

S \stps\docs\kmfc\cig\contguar doc 12/98

# **EXHIBIT 5**

**Kawasaki Motors Finance Corporation**

# Continuing Guaranty

`* C G 5 *`

Kawasaki Motors
Finance Corporation

1  **Indebtedness Guaranteed**  For valuable consideration, the undersigned ("Guarantor") irrevocably and unconditionally guarantees and promises to pay to Kawasaki Motors Finance Corporation ("KMFC"), or order, on demand, when due whether by acceleration or otherwise, in lawful money of the United States in cash or in immediately available funds acceptable to KMFC, any and all indebtedness (the "Indebtedness") of CBL ENTERPRISES, INC  ("Dealer") to KMFC  The word "Indebtedness" is used herein in its most comprehensive sense and includes any and all advances (including interest thereon), debts, obligations, and liabilities of Dealer heretofore, now or hereafter made, incurred or created, whether voluntary or involuntary, and however arising, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, and whether Dealer may be liable individually or jointly with others or whether recovery upon such Indebtedness may be now, or later become, barred by any statute of limitations, or whether such Indebtedness may be or later become otherwise unenforceable, and any and all amendments, modifications, renewals or extensions of any Indebtedness, including, but not limited to, those which are evidenced by new or additional instruments or agreements

2  **Continuation and Renewal**  This Continuing Guaranty ("Guaranty") relates to all Indebtedness, including that arising after any repayment and reborrowing and under successive transactions, which shall either continue or increase the Indebtedness or from time to time renew it after it has been satisfied  The liability of Guarantor shall be for the full amount due KMFC at any time and from time to time, and shall include principal, together with all interest upon the Indebtedness, and any and all charges of KMFC to Dealer  Guarantor hereby agrees that KMFC may grant such renewals, extensions, variations, waivers and releases without further notice to or authority from Guarantor and without affecting KMFC's rights or Guarantor's obligations hereunder  This Guaranty is a continuing guaranty and is without limitation as to its effective period, and the obligations hereunder may be terminated only upon payment in full of all Indebtedness  This Guaranty shall not constitute a commitment of any nature whatsoever, by KMFC to renew or hereafter extend credit to Dealer or Guarantor

3  **Independent Obligations**  The obligations hereunder are independent of the obligations of Dealer and any guarantor that has executed and delivered, or may hereafter execute and deliver, a separate guaranty  A separate action or actions may be brought and prosecuted against Guarantor, whether an action is brought against Dealer or any other guarantor, or whether Dealer or any other guarantor is joined in any such action or actions  Guarantor waives the benefit of any statute of limitations affecting Guarantor's liability hereunder or the enforcement thereof to the fullest extent allowed by law and further waives all compensation of cross-demands pursuant to California Code of Civil Procedure Section 431 70  This Guaranty is not given in reliance upon any guaranty being received or effective from any other person(s), and the release, death of or revocation by any other guarantor shall not operate to release or otherwise affect the continuing liability of Guarantor hereunder  All of KMFC's rights are cumulative and not exclusive, and any later executed guaranty shall not operate to supersede or replace this Guaranty

4  **Reinstatement of Liability**  The liability of Guarantor hereunder shall be reinstated and revived, and the rights of KMFC shall continue with respect to any amount paid by Dealer on Account of the Indebtedness that shall thereafter be required to be restored or returned by KMFC upon the bankruptcy, insolvency or reorganization of Dealer or for any other reason. all as though such amount had not been paid

5  **Representations and Warranties**  Guarantor represents and warrants that  (a) KMFC has made no representation to Guarantor as to the creditworthiness of Dealer, and (b) Guarantor has established adequate means of obtaining from Dealer, on a continuing basis, financial and other information pertaining to Dealer's financial condition, operations, management, and payment of the Indebtedness  Guarantor agrees to keep adequately informed of any facts, events or circumstances that might in any way affect Guarantor's risks hereunder, and Guarantor further agrees that KMFC shall have no obligation to disclose to Guarantor information or material acquired in the course of KMFC's relationship with Dealer

6  **KMFC's Authority**  Guarantor authorizes KMFC without notice or demand, without any separate or additional authorization from Guarantor and without affecting Guarantor's liability hereunder or affecting KMFC's rights, from time to time (a) to renew, compromise, extend, vary, accelerate or otherwise change the time for payment of, or otherwise change the terms of any Indebtedness, or any part thereof, including any increase or decrease of the rate of interest thereon, (b) to take and hold security for payment of this Guaranty or the Indebtedness guaranteed, and exchange, enforce, waive and release any such security, (c) to apply such security and direct the order or manner of sale thereof as KMFC in its sole discretion may determine, (d) to release or substitute any guarantor, obligor or endorser that has delivered a separate guaranty of Indebtedness, (e) to accept partial payments, and (f) to accept new or additional documents or instruments relating to the Indebtedness  KMFC may, without notice, assign this Guaranty in whole or in part

7  **Waivers**  Guarantor waives any right to require KMFC to proceed against Dealer, proceed or exhaust any security held from Dealer, or pursue any other remedy in KMFC's power whatsoever, including, without limitation, proceeding against any other guarantor of Indebtedness or exhausting KMFC's remedies under any other guaranty of Indebtedness  Guarantor waives any defense arising by reason of any disability or other defense of Dealer or by reason of the cessation from any cause of the liability of Dealer until all Indebtedness of Dealer to KMFC shall have been paid in full, even though such Indebtedness is in excess of the Guarantor's liability hereunder  Guarantor shall have no right to subrogation and Guarantor waives any right to enforce any remedy which KMFC now has or may hereafter have against Dealer  Guarantor shall be liable to KMFC for any deficiency resulting from KMFC's exercise of its rights or remedies, even though any rights which Guarantor may have against others, including, but not limited to, subrogation rights, may be diminished or destroyed as a result of KMFC's action  Guarantor further waives all presentments, demands for performance, notices of nonperformance, protests, notices of protests, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation, or incurring of new or additional Indebtedness  Guarantor waives the benefit of any statute of limitations affecting Guarantor's liability hereunder or the enforcement thereof

8  **Subordination**  Any indebtedness of or claim against Dealer now or hereafter held by Guarantor is hereby subordinated to the Indebtedness of Dealer to KMFC  Any such Indebtedness of Dealer to Guarantor, if KMFC so requests, shall be collected, enforced and received by Guarantor as trustee for the benefit of KMFC and be paid over to KMFC on account of Indebtedness of Dealer to KMFC, without reducing or affecting in any manner the liability of Guarantor under this Guaranty

9  **Obligations of Married Persons**  Any married person who signs this Guaranty hereby expressly agrees that recourse may be had against his or her separate and community property for all of his or her obligations under this Guaranty

1654        04/02/00

10    Interpretation and Applicable Law    In all cases in which there is but a single Dealer or Guarantor, all words used herein in the plural shall be deemed to have been used in the singular when the context and construction so require, and when there is more than one Dealer or Guarantor named herein, the word "Dealer" and "Guarantor," respectively, shall mean all and any one or more of them    This Agreement shall become effective when KMFC accepts it at KMFC's principal place of business in California, and this Agreement shall be governed and construed in accordance with the laws of the State of California

11    Guarantor's Authority, Successors and Assigns    Where one or more of Dealer or Guarantor are corporations or partnerships it is not necessary for KMFC to inquire into the power of Dealer, Guarantor or their respective officers, directors, partners, or agents acting, or persons purporting to act, on their behalf, and any indebtedness or guaranty made or created in reliance upon the professed exercise of such power shall be guaranteed hereunder    This Guaranty shall bind the successors and assigns of Guarantor and shall inure to the benefit of KMFC and its successors and assigns

12    Attorneys' Fees    Guarantor agrees to pay reasonable attorneys' fees and all other costs and expenses which may be incurred by KMFC in the collection or enforcement of Guarantor's obligations pursuant to this Guaranty or the Indebtedness, whether or not suit is filed    The prevailing party in any action or proceeding to enforce this Guaranty shall be entitled to an award for reasonable attorneys' fees and court costs, including execution or enforcement of any judgment and any and all appeals therefrom    All such amounts due KMFC shall be paid immediately, upon demand by KMFC, and if not paid when so demanded, shall bear interest at the highest rate allowed by law

13    Entire Agreement    This Guaranty constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof and no modification or change in any of the terms and conditions shall be effective unless in writing and signed by KMFC    In the event any provision hereof shall be held by a court of competent jurisdiction to be invalid or unenforceable, the remainder of said provision (to the extent the same is not held to be invalid or unenforceable) and all other provisions of this Guaranty shall not be affected thereby and shall remain valid, enforceable, and binding upon Guarantor as herein provided

14    Reliance by KMFC    Guarantor acknowledges that KMFC has extended, or may in the future extend, credit to Dealer in reliance on Guarantor's unconditional promise to repay all present and future Indebtedness of Dealer to KMFC, and that the waivers, warranties and promises made by Guarantor in this Guaranty are required to establish Guarantor's unconditional liability to KMFC    Therefore, Guarantor agrees that each of the waivers, warranties and promises set forth in this Guaranty are made with Guarantor's understanding of their significance and consequences and that they are reasonable    If any waivers, warranties and promises are determined to be contrary to any applicable law or public policy, such waivers, warranties and promises, and all other provisions of this Guaranty shall be effective to the maximum extent permitted by law

Executed by the undersigned Guarantor this *2nd* day of *April*, *2000*

GUARANTOR

_Alfred J Balerna_
(Signature)                                           Address    52 ORCHARD HILL DRIVE
                                                                SHARON, MA   02067

**ALFRED J. BALERNA**

Social Security No   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                      Kawasaki Dealer Number   **1654 - 5**

### [ALL SIGNATURES MUST BE NOTARIZED]

STATE OF *Massachusetts*    )
                            )    SS
COUNTY OF *Barnstable*      )

On *April 2 2000* before me, the undersigned Notary Public, in and for said County and State, personally appeared ALFRED J BALERNA, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted executed the instrument

WITNESS my hand and official seal

Signature _Joyce Zenus_                                            (Seal)

_My commission expires_
_April 27, 2000_

2

# EXHIBIT 6

**Dealer Number:** 1654

**Organization Code:** 1-17-40-40

04/27/05

Page 1 of 2

## CAPE COD POWERSPORTS KAWASAKI
## DBA KAWASAKI OF CAPE COD
## UCC SALE DEFICIENCIES

**Phone:** (508) 771-5900

92 BARNSTABLE RD                                HYANNIS          MA   02601

| Model Number | Year | VIN | Status | Flooring Amount | Sale Price | Deficiency |
|---|---|---|---|---|---|---|
| VN1500E7 | 2004 | JKBVNAE184A116521 | Uncrated | $7,779.00 | $6,781.00 | $998.00 |
| ZX1200B2 | 2003 | JKAZX9B133A008969 | Uncrated | $9,449.00 | $8,260.00 | $1,189.00 |
| KAF300C5 | NA | JK1AFBC121B530960 | Uncrated | $4,404.00 | $3,865.00 | $539.00 |
| KL650A18 | 2004 | JKAKLEA104DA08311 | Uncrated | $4,379.00 | $4,180.00 | $199.00 |
| VN1500P2 | 2003 | JKBVNAP103A013086 | Uncrated | $9,024.00 | $8,226.00 | $798.00 |
| KX100D4 | 2004 | JKAKXTDC64A012478 | Uncrated | $2,811.00 | $2,522.00 | $289.00 |
| KLX400B1 | 2003 | JS1DK43C132100474 | Uncrated | $4,731.00 | $3,682.00 | $1,049.00 |
| ZR1200A3 | 2003 | JKAZR9A153A025199 | Uncrated | $6,814.00 | $5,996.00 | $818.00 |
| VN1600A1 | 2003 | JKBVNKA143A005569 | Uncrated | $9,024.00 | $7,826.00 | $1,198.00 |
| ZR1000A1 | 2003 | JKAZRCA103A011773 | Uncrated | $7,324.00 | $6,305.00 | $1,019.00 |
| ZR1200A3 | 2003 | JKAZR9A143A026814 | Uncrated | $6,814.00 | $5,996.00 | $818.00 |
| ZX1200C2 | 2003 | JKAZX9C133A010901 | Uncrated | $9,024.00 | $7,935.00 | $1,089.00 |
| KX125M2 | 2004 | JKAKXRMC74A010094 | Missing | $4,379.00 | $0.00 | $4,379.00 |
| KSF250A17 | 2003 | JKASFMA123B537459 | Missing | $2,869.00 | $0.00 | $2,869.00 |
| KX85A4 | 2004 | JKBKXFAC04A022134 | Missing | $2,529.00 | $0.00 | $2,529.00 |
| KSF250A17 | 2003 | JKASFMA153B537455 | Missing | $2,869.00 | $0.00 | $2,869.00 |
| ZR1000A1 | 2003 | JKAZRCA163A002365 | Missing | $7,324.00 | $0.00 | $7,324.00 |
| VN800A10 | 2004 | JKBVNCA164B512572 | Missing | $5,199.00 | $0.00 | $5,199.00 |
| JH1100B2 | 2002 | KAW90438K102 | Missing | $6,949.00 | $0.00 | $6,949.00 |
| JT1100G1 | 2003 | KAW70423H203 | Missing | $7,374.00 | $0.00 | $7,374.00 |
| VN1500P2 | 2003 | JKBVNAP133A015267 | Missing | $8,974.00 | $0.00 | $8,974.00 |
| VN1500L4 | 2003 | JKBVNAL143A020578 | Missing | $11,149.00 | $0.00 | $11,149.00 |
| ZX636B2 | 2004 | JKBZXJB194A029419 | Missing | $6,929.00 | $0.00 | $6,929.00 |
| KAF620E2 | NA | JK1AFCE162B517598 | Missing | $7,569.00 | $0.00 | $7,569.00 |
| VN1500L4 | 2003 | JKBVNAL143A022007 | Missing | $11,149.00 | $0.00 | $11,149.00 |
| KSF250A17 | 2003 | JKASFMA183B537661 | Missing | $2,869.00 | $0.00 | $2,869.00 |

Dealer Number:  1694

Organization Code:  1-17-40-40

**CAPE COD POWERSPORTS KAWASAKI**

**DBA KAWASAKI OF CAPE COD**

**UCC SALE DEFICIENCIES**

Page 2 of 2

Phone:  (508) 771-5900

92 BARNSTABLE RD                                          HYANNIS          MA   02601

| Model Number | Year | VIN | Status | Flooring Amount | Sale Price | Deficiency |
|---|---|---|---|---|---|---|
| JT1200B2 | 2004 | KAW40285J304 | Missing | $7,399.00 | $0.00 | $7,399.00 |
| KSF250A17 | 2003 | JKASFMA143B537592 | Missing | $2,869.00 | $0.00 | $2,869.00 |
| KX65A5 | 2004 | JKBKXEAC94A037368 | Insurance | $2,344.00 | $0.00 | $2,344.00 |
| ZX1200C3 | 2004 | JKAZX9C1X4A015451 | Crated | $9,054.00 | $8,254.00 | $800.00 |
| VN1500E7 | 2004 | JKBVNAE1X4A116763 | Crated | $7,779.00 | $7,081.00 | $698.00 |
| VN1600B1 | 2004 | JKBVNKB124A001732 | Crated | $9,479.00 | $8,600.00 | $879.00 |
| KX125M2 | 2004 | JKAKXRMC04A013421 | Crated | $4,379.00 | $4,081.00 | $298.00 |
| VN1500E7 | 2004 | JKBVNAE114A117333 | Crated | $7,779.00 | $7,081.00 | $698.00 |
| JT1100G1 | 2003 | KAW70189H203 | Crated | $7,374.00 | $6,076.00 | $1,298.00 |
| JH1100A8 | 2003 | KAW30116G203 | Crated | $5,844.00 | $4,786.00 | $1,058.00 |
| KLX400B1 | 2003 | JS1DK43C532101661 | Crated | $4,731.00 | $3,882.00 | $849.00 |
| VN1600B1 | 2004 | JKBVNKB154A000624 | Crated | $9,479.00 | $8,600.00 | $879.00 |

| Totals: | | | | | | |
|---|---|---|---|---|---|---|
| | | Sale Units: | | $147,475.00 | $130,015.00 | $17,460.00 |
| | | Non-Sale Units: | | $100,743.00 | $0.00 | $100,743.00 |
| | | | | $248,218.00 | $130,015.00 | $118,203.00 |